ORIGINAL

\05_A\LIAB\RGH\LLPG\93703\RYM\13061\00145

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMERICAN TOWER, L.P.,            :
       Plaintiff,                :
                      :       No. 1:00 - CV-2234
   v.                          :
                      :       [JUDGE KANE]
ZONING HEARING BOARD OF         :
MONROE TOWNSHIP, ET AL.,        :
       Defendants.               :

**FILED**
HARRISBURG, PA

APR 2 9 2002

MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

## PRAECIPE

TO THE CLERK:

    We wish to call to the Court's attention to two (2) new Third Circuit Court of Appeals decisions which directly impact on the outstanding Summary Judgment Motion.

    On April 11, 2002, in *Nextel v. Kingston Township*, 2002 U.S. App. LEXIS 6688 (2002), our Circuit Court held that "…the TCA implicitly precludes an action under §1983 creating a comprehensive remedial scheme that furnishes private judicial remedies." Citation attached as Exhibit "A".

On March 5, 2002, the Court of Appeals in *Nextel W. Corp. v. Unity Township*, 282 F.3d 257 (2002), reviewed the methodology required to analyze a TCA claim. Citation attached as Exhibit "B".

<div style="margin-left:40%">

Respectfully submitted,
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

</div>

DATED: 4-23-2002   BY:

Robert G. Hanna, Jr., Esquire
4200 Crums Mill Road
Suite B
Harrisburg, PA 17110
I.D. No. 17890
(717) 651-3515

Attorney for Defendant,
Zoning Hearing Board of Monroe Township

Source:  All Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > US Court of Appeals Cases - 3rd
         Circuit ⓘ
Terms:   tca and date geq (1/1/2002)  (Edit Search)

         ☞ Select for FOCUS™ or Delivery
         ☐

*2002 U.S. App. LEXIS 6688, \**

NEXTEL PARTNERS INC., Appellant v. KINGSTON TOWNSHIP; WILLIAM F. ANZALONE; TINA
M. ANZALONE; ERIC WOLFSON; STEFANIE WOLFSON; CHRISTOPHER L. HACKETT; RAMAH P.
HACKETT; STEVEN J. KERZWEIL; SUSAN Z. WILKINSON; ROBERT J. FIORELLI; JOANNE
FIORELLI; ROBERT C. RILEY; SHERRY L. RILEY; HARVEY J. REISER; KATHLYN M. REISER;
JOSEPH ALLEN MOORE/ MICHAEL CORGAN, T/A WOODBRIDGE ASSOCIATES (Intervenors in
D.C.)

No. 00-2502

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2002 U.S. App. LEXIS 6688

September 6, 2001, Argued
**April 11, 2002, Filed**

**PRIOR HISTORY:  [\*1]**  ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA. (Dist. Court No. 3:99-CV-2097). District Court Judge:
Honorable James M. Munley.

**DISPOSITION:** Affirmed.

**COUNSEL:** CHRISTOPHER H. SCHUBERT, MICHAEL J. GAVIN (Argued), Riley, Riper, Hollin &
Colagreco, Exton, PA. JAMES C. DALTON, Riley, Riper, Hollin & Colagreco, Paoli, PA, Counsel
for Appellant.

ZYGMUNT R. BIALKOWSKI, JR. (Argued), Margolis Edelstein, Scranton, PA, Counsel for
Appellee, Kingston Township.

DONALD H. BROBST (Argued), Rosenn, Jenkins & Greenwald, LLP, Wilkes-Barre, PA. WILLIAM
F. ANZALONE, Anzalone Law Offices, Wilkes-Barre, PA, Counsel for Appellees, William F.
Anzalone et al.

**JUDGES:** Before: BECKER, Chief Judge, ALITO and BARRY, Circuit Judges.

**OPINIONBY:** ALITO

**OPINION:** OPINION OF THE COURT

ALITO, Circuit Judge:

Nextel Partners, Inc. ("NPI"), a wireless telecommunications joint venture, wishes to
construct a personal wireless communications tower on private property in Kingston
Township, Pennsylvania. Unable to obtain variances, NPI entered into negotiations with the
Township but never formally applied for a building permit. Instead, NPI filed this action in
federal district court, asserting claims under a provision  **[\*2]**  of the federal
Telecommunications Act of 1996 ("**TCA**"), 47 U.S.C. § 332(c)(7)(B)(i), and 42 U.S.C. § 1983.
The District Court dismissed, and we affirm.

DEFENDANT'S
EXHIBIT

A

I.

NPI is participating in the creation of a national wireless network to provide "enhanced specialized mobile radio service," which integrates several different types of wireless service. See Appellant's Br. at 4-5. NPI determined that, in order to cover an area that includes segments of three major highways, it needed to build a 150-foot "monopole" tower and related facilities ("a telecommunications facility") on or near certain property that it leased from Daniel Voitek in Kingston Township. In July 1999, NPI submitted to the Kingston Township Zoning Hearing Board (ZHB) a "validity challenge" to the Kingston zoning ordinance. NPI alleged, among other things, that the ordinance violated the **TCA.** NPI claimed that, although the **TCA** provides that state and local laws "shall not prohibit or have the effect of prohibiting the provision of personal wireless services," 47 U.S.C. § 332(c)(7)(B)(i) n1, the Kingston ordinance on its face did not allow wireless telecommunications **[*3]** facilities anywhere in the Township. In the alternative, NPI sought the issuance of use and dimensional variances and "such other interpretations, waivers and/or variances as may be required" to build the proposed facility. Appellant's App. at 41.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 The statute, in pertinent part, provides as follows:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i) (2000).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

The ZHB conducted a hearing and issued a written decision on October 7, 1999. The ZHB agreed with NPI that the Township's ordinance did not permit wireless telecommunication facilities in any zoning district, and the ZHB recommended that the Township amend the ordinance. However, the ZHB denied NPI's application for a use variance. It concluded that the proposed site was "not **[*4]** a proper location for a monopole tower," "giving due consideration to topography, adjoining uses and the public health and welfare." Appellee's App. at 39. The ZHB also observed that NPI had not proven that the property could not be developed in conformity with the provisions of the zoning ordinance or that denial of the use variance would result in an unnecessary hardship.

The **TCA** allows an aggrieved party to file an action in a court of competent jurisdiction within 30 days after a "final action or failure to act by a State or local government or any instrumentality thereof." 47 U.S.C. § 332(c)(7)(B)(v). NPI, however, did not file its **TCA** action in federal district court until 57 days after the ZHB denied its application. Instead, NPI first attempted to negotiate with the Township's Board of Supervisors and its Solicitor. Precisely what occurred during these discussions is disputed.

NPI alleges that, at a meeting on November 3, 1999, the Township conceded that its ordinance was invalid, promised to issue the permits necessary for the tower, and agreed to extend the deadline for filing an action to contest the ZHB decision. NPI states that, in reliance on **[*5]** this agreement with the Township, it withheld filing the complaint that it had planned to file on November 5 (within 30 days of the ZHB's October 7 decision). The

Township, by contrast, denies that the parties ever reached a final settlement. According to the Township, the parties merely came to a general framework for a "tentative resolution," and no final agreement to issue a building permit was ever reached. Appellee's Br. at 7. The Township acknowledges, however, that it agreed to an extension of the time during which NPI could file an action in federal court contesting the decision of the ZHB. The Township's position is consistent with what is apparently the only document generated by the November 3 meeting: a letter dated November 4, 1999 from NPI's counsel to the Township's Solicitor. The letter described their agreement as a "general framework" and a "tentative resolution." Appellant's App. at 64. It confirms arrangements for NPI to pick up a permit application, but it does not indicate that the Township had promised to issue a building permit. NPI never filed a permit application.

On December 3, 1999, NPI filed this action in the United States District Court for the Middle **[*6]** District of Pennsylvania, naming both the ZHB and the Township as defendants and asserting both federal and state-law claims. After property owners intervened in the action, NPI filed an amended two-count complaint that named the Township as the sole defendant. Count I of the amended complaint asserted a claim directly under the **TCA.** Count I averred that the Township was violating the **TCA** because its ordinance had the effect of prohibiting the provision of personal wireless service. As relief, Count I sought a writ of mandamus and an injunction requiring the Township to permit construction of a telecommunications facility on the Voitek site, as well as damages and other relief. Count II asserted a similar **TCA** claim under <u>42 U.S.C. § 1983</u> and requested damages and attorney's fees.

While this action was pending before the District Court, the Township amended its ordinance in April 2000. On its face, the new ordinance allowed wireless telecommunications facilities to be built in the Township. In July 2000, the District Court dismissed NPI's action. The Court held that the claim asserted in Count I was barred because NPI had not commenced its action within 30 days **[*7]** after the ZHB denied its application. The Court held that the 30-day rule was "jurisdictional" and could not be extended. In addition, the Court opined that the April 2000 amendment of the ordinance had rendered Count I moot, and the Court stated that it would have dismissed this count as moot "even if the thirty-day limitations period had been satisfied." The Court dismissed Count II for failure to state a claim on which relief may be granted. The Court held that a federal **TCA** claim may not be asserted under § 1983. This appeal followed. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 In October 2000, NPI applied for a permit under the new Kingston ordinance, as amended in April 2000. But in February 2001, the ZHB denied this application. NPI challenged this denial by filing a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania (Docket No. 1856-C (2001)).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

On appeal, NPI argues that the claim advanced in Count I of its amended complaint was timely and that a **TCA** claim may be asserted under § 1983. We will address each of these arguments **[*8]** in turn.

II.

Although the **TCA** recognizes that the states retain primary authority for land use regulation, the Act places certain specified restrictions on the regulation of personal wireless service. See <u>47 U.S.C. § 332</u>(c)(7). The key provision says that state and local regulations may not either "unreasonably discriminate among providers of functionally equivalent services" or "prohibit or have the effect of prohibiting the provision of personal wireless services." <u>47 U.S.C. § 332</u> (c)(7)(B)(i). State and local governments and instrumentalities are also enjoined to "act on any request for authorization to place, construct or modify personal wireless service facilities

within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). In addition, "any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [47 U.S.C. § 332(c)(7)(B)] may, within 30 days after such action or failure to act, commence an **[*9]** action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added).

In this case, as noted, the District Court dismissed Count I of NPI's amended complaint on the ground that NPI did not commence its action within 30 days after the decision of the ZHB. NPI maintains, however, that the District Court's holding was based on an erroneous understanding of the claim asserted in Count I. That claim, NPI states, was not based on the decision of the ZHB (which had been dropped as a defendant) but on the Township's continued failure to amend its ordinance, which was inconsistent with the **TCA**. n3 NPI therefore argues that the 30-day limitations period in 47 U.S.C. § 332(c)(7)(B)(ii) did not begin to run until the Township amended its ordinance on April 12, 2000. See Appellant's Br. at 16. It is apparently NPI's position that during the entire period up to April 12, 2000, the Township was continuously engaged in a "failure to act . . . that was inconsistent with [47 U.S.C. § 332(c)(7)(B)]." 47 U.S.C. § 332(c)(7)(B)(v).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 In view of this argument, we need not and do not decide whether a claim contesting the decision of the ZHB would have been time-barred despite the Township's agreement to extend the time for NPI to file an action under the **TCA**.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - **[*10]**

Read generously, Count I of the amended complaint may assert two separate **TCA** claims. The first -- and plainly the chief -- claim is that the Township violated the **TCA** by failing to approve the construction of NPI's proposed facility. The second is that the prior Kingston ordinance was inconsistent on its face with the **TCA** and that NPI should receive relief from having to comply with that invalid ordinance. We hold that the first claim does not fall within 47 U.S.C. § 332(c)(7)(B)(v) because NPI never filed with the Township a request for approval of its proposed facility. We hold that the second claim is moot.

A.

We turn to NPI's claim that the Township violated the **TCA** by failing to approve its proposed facility. The language of 47 U.S.C. § 332(c)(7)(B)(v) permitting an aggrieved party to commence an action to challenge a "failure to act" must be read in conjunction with the previously noted provision requiring state and local governments and instrumentalities to act within a reasonable time on "any request for authorization to place, construct, or modify personal wireless service facilities." 47 U.S.C. § 332(c)(7)(B)(iii). **[*11]** Thus, if a state or local government or instrumentality fails to act on a "request for authorization to place, construct, or modify [a] personal wireless service facility," 47 U.S.C. § 332(c)(7)(B)(iii), that "failure to act" is actionable under 47 U.S.C. § 332(c)(7)(B)(v). Here, if NPI had filed such a request with the Township and the Township had failed to act on the request, the Township's failure to act would be deemed a denial and could be challenged in court.

It is undisputed, however, that NPI never filed with the Township a building permit application or any other "request for authorization to place, construct, or modify personal wireless service facilities." n4 Yet the main thrust of Count I of NPI's amended complaint is that the Township violated the **TCA** by failing to approve construction of its proposed telecommunications facility on the Voitek site. Similarly, the primary relief sought in Count I is the issuance of a writ or injunction requiring the Township to grant such approval. n5 To the extent that Count I challenges the Township's failure to approve NPI's facility, we hold that it does not fall within **[*12]** 47 U.S.C. § 332(c)(7)(B)(v). In the absence of a request

to approve the construction of a facility, the failure to approve the facility is not a "failure to act" within the meaning of this provision.

- - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - -

n4 Moreover, even if NPI had applied to the Township for a building permit, the Township apparently lacked the power to act on such an application under state law. See Pa. Stat. Ann. tit. 53 § 10909.1(a)(3) (West 1997) (conferring upon the zoning hearing board "exclusive jurisdiction to hear and render final adjudications" over appeals from the decision of the zoning officer, including "the granting or denial any permit, or failure to act on the application therefor . . . .").

n5 Count I requested that the District Court "issue a Writ of Mandamus and enter preliminary and permanent injunctions directing Defendant Kingston Township, to grant approval of NPI's telecommunications facilty to permit the use of the Property for a telecommunications facility including a 150' monopole in accordance with NPI's Application." Appellant's App. at 26a.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - **[*13]**

For a similar reason, we also see no merit in NPI's alternative argument that the 30-day period did not begin to run until November 3, 1999, "the date that the Township agreed to issue a building permit to NPI to remedy the deficiency with its Ordinance." Appellant's Br. at 16. Assuming for the sake of argument that the Township orally agreed during the settlement discussions to issue a building permit, the fact remains that NPI never applied to the Township for a permit. Accordingly, the Township did not engage in the type of "failure to act" that is actionable under 47 U.S.C. § 332(c)(7)(B)(v).

B.

We now consider the second claim that we perceive in Count I, i.e., that the old Kingston ordinance was inconsistent on its face with the **TCA** and should not be enforced against NPI. We affirm the dismissal of this claim on the ground that it is moot.

Under Article III, section 2 of the U.S. Constitution, federal judicial power extends only to cases and controversies. If a claim no longer presents a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it. See Allen v. Wright, 468 U.S. 737, 750, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). **[*14]** This requirement must be met "through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472 477, 108 L. Ed. 2d 400, 110 S. Ct. 1249 (1990). If a claim is based on a statute or ordinance that is amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment. See Nextel West Corp. v. Unity Township, 282 F.3d 257, (3d Cir. 2002).

As we recently noted, "if an amendment removes those features in the statute being challenged by the claim, any claim for injunctive relief 'becomes moot as to those features.'" Unity Township, 282 F.3d at 262 (quoting Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 194 (3d Cir. 2001)). On the other hand, an amendment does not moot a claim for injunctive relief if the updated statute differs only insignificantly from the original. See Unity Township, 282 F.3d at 262. Similarly, a request for a declaratory judgment that a statutory provision is invalid is moot if the provision has been substantially amended or repealed. See id. at 263 n.5; see also Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414-15, 30 L. Ed. 2d 567, 92 S. Ct. 574 (1972). **[*15]**

Here, if we read Count I as seeking an injunction against enforcement of the old ordinance and a declaratory judgment that the old ordinance violated the **TCA** because it entirely prohibited the construction of telecommunications facilities in the Township, the 2000 amendment rendered those requests for relief moot. In Unity Township, we held that a claim

for injunctive relief was not mooted by an amendment to an ordinance because the plaintiff had adduced evidence that the prohibitive effect of the ordinance had not been substantially altered. Here, by contrast, NPI did not attempt to make such a showing. It did not compare the effect of the original ordinance and the amended ordinance. Instead, NPI appears to rely on a dubious bit of inductive reasoning: until NPI receives a permit, which it still does not have after the amendment, the ordinance necessarily violates the **TCA** on its face. That is simply not how the statute operates.

III.

We now turn to the question whether the District Court correctly dismissed Count II because a **TCA** claim may not be asserted under 42 U.S.C. § 1983. Section 1983 provides a private right of action against any person who, acting **[\*16]** under color of state or territorial law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. See also Maine v. Thiboutot, 448 U.S. 1, 4, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980). In order to seek redress under § 1983, a plaintiff "must assert the violation of a federal right," and not merely a violation of federal law. Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106, 107 L. Ed. 2d 420, 110 S. Ct. 444 (1989). Thus, a plaintiff alleging a violation of a federal statute may not proceed under § 1983 unless (1) the statute creates "enforceable rights, privileges, or immunities within the meaning of § 1983" and (2) Congress has not "foreclosed such enforcement of the statute in the enactment itself." Wright v. Roanoke Redev. & Hous. Auth., 479 U.S. 418, 423, 93 L. Ed. 2d 781, 107 S. Ct. 766 (1987). See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 69 L. Ed. 2d 435, 101 S. Ct. 2615 (1981) (holding that § 1983 actions were impliedly precluded under the Federal Water Pollution Control Act).

A plaintiff asserting a statutory claim under § 1983 **[\*17]** has the initial burden of demonstrating that the statute creates a substantive right. See Blessing v. Freestone, 520 U.S. 329, 137 L. Ed. 2d 569, 117 S. Ct. 1353 (1997). If the plaintiff carries this burden, a rebuttable presumption arises that a § 1983 claim is available, and the burden shifts to the defendant to show that a § 1983 action was explicitly or implicitly precluded by the statute. See Wright, 479 U.S. at 423. One way that a statute may implicitly preclude a § 1983 action is by creating a comprehensive remedial scheme. See Sea Clammers, 453 U.S. at 20; Smith v. Robinson, 468 U.S. 992, 1011, 82 L. Ed. 2d 746, 104 S. Ct. 3457 (1984) (holding that § 1983 actions were impliedly precluded under the Education of the Handicapped Act); see also Farley v. Philadelphia Hous. Auth., 102 F.3d 697, 703 (3d Cir. 1996) ("The Supreme Court has held that in enacting the U.S. Housing Act, Congress did not specifically foreclose a § 1983 remedy by enactment of a comprehensive scheme of remedial mechanisms").

A key distinction between schemes that are sufficiently comprehensive to preclude a § 1983 claim and those that **[\*18]** are not is the availability of private judicial remedies under the statute giving rise to the claim. "In both Sea Clammers and Smith v. Robinson, the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." Wright, 479 U.S. at 427. In Wright, by contrast, the Court found "nothing of that kind" in the housing statute at issue, and the Court ultimately concluded that § 1983 remedies were not precluded. Id. Similarly in Blessing, the Court reasoned that § 1983 remedies might be available under the statute at issue because "unlike the federal programs at issue in [Sea Clammers and Smith, this statute] contains no private remedy--either judicial or administrative--through which aggrieved persons can seek redress." Blessing, 520 U.S. at 348 (analyzing Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq.).

Applying this analysis to the **TCA**, we hold that the **TCA** implicitly precludes an action under § 1983 by creating a comprehensive remedial scheme that furnishes private judicial remedies. While the remedial scheme provided by the **TCA** is not **[\*19]** complicated, we believe that it is comprehensive in the relevant sense: it provides private judicial remedies that incorporate both notable benefits and corresponding limitations. Allowing plaintiffs to

assert **TCA** claims under § 1983 would upset this balance.

Under the **TCA,** an aggrieved party may file an action in any court of competent jurisdiction. 47 U.S.C. § 332(c)(7)(B)(v). The **TCA** requires that such an action be filed within a very short period -- 30 days -- after an adverse decision or failure to act, and the Act correspondingly requires the court to "hear and decide such action on an expedited basis." Id. This streamlined review may work to the benefit of plaintiffs and defendants in different ways. For plaintiffs, it may provide speedy redress for violations of the Act. For defendants, assuming for the sake of argument that damages may be recovered under the **TCA** itself, n6 quick review may diminish the amount that may be recovered. We also find it important that the **TCA** makes no provision for attorney's fees, and it is of course "the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees. **[\*20]** " Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 127 L. Ed. 2d 455, 114 S. Ct. 1023 (1994); see also Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 247-62, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 We do not decide this question but note that when a statute creates a private right of action but does not specify what remedies are available, the availability of all appropriate remedies is generally presumed. See Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-71, 117 L. Ed. 2d 208, 112 S. Ct. 1028 (1992). As a matter of practice, however, the typical relief in cases like the one before us has been injunctive. See Omnipoint Communications v. Town of Lincoln, 107 F. Supp. 2d 108, 120-21 (D. Mass. 2000) (observing that "the majority of district courts . . . have held that the appropriate remedy for a violation of the **TCA** is a mandatory injunction"). Four district courts have expressly held that damages are not available under the **TCA** itself. See AT&T Wireless v. City of Atlanta, 50 F. Supp. 2d 1352, 1362-64 (N.D. Ga. 1999) (reversed on other grounds); Primeco Personal Communications Ltd. P'ship v. Lake County, 1998 U.S. Dist. LEXIS 22599, 1998 WL 565036 (M.D. Fla. July 20, 1998); Virginia Metronet v. Board of Supervisors of James City County, 984 F. Supp. 966 (E.D. Va. 1998); Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732 (C.D. Ill. 1997).

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[\*21]**

If a plaintiff alleging a violation of the **TCA** could assert its claim under § 1983, the remedial scheme of the **TCA** would be upset. A plaintiff would be freed of the short 30-day limitations period and would instead presumably have four years to commence the action. See 28 U.S.C. § 1658. The court would also presumably be freed of the obligation to hear the claim on an expedited basis. Perhaps most important, attorney's fees would be available. **TCA** plaintiffs are often large corporations or affiliated entities, whereas **TCA** defendants are often small, rural municipalities. Such municipalities may have little familiarity with the **TCA** until they are confronted with a **TCA** claim, and in land-use matters they may generally rely on attorneys who may likewise know little about the **TCA**. See Omnipoint Communications v. Penn Forest, 42 F. Supp. 2d 493, 506 (M.D. Pa. 1999). Allowing **TCA** plaintiffs to recover attorney's fees from such municipalities might significantly alter the Act's remedial scheme and thus increase the federal burden on local land-use regulation beyond what Congress intended. We are therefore persuaded that the **TCA** contains a remedial scheme **[\*22]** that is sufficiently comprehensive to show that Congress impliedly foreclosed resort to § 1983.

We are aware that a panel of the Eleventh Circuit, in a decision that was later vacated, reached a contrary conclusion. See AT&T Wireless PCS, Inc. v. City of Atlanta, 210 F.3d 1322 (11th Cir. 2000), vacated on other grounds, 223 F.3d 1324 (11th Cir. 2000), but we respectfully disagree with the reasoning of that decision. n7 The vacated decision relied on the **TCA's** savings clause, which provides that the Act is not to be construed "to modify, impair, or supercede Federal, state, or local law unless so provided in such Act or amendments." Pub. L. No. 104-104 § 601(c)(1), 110 Stat. 143 (1996) (reprinted in 47 U.S.C.

§ 152, historical and statutory notes). However, our holding in this case -- that the relevant provision of the **TCA** does not create a right that is enforceable under § 1983 -- does not mean that the **TCA** in any way modified, impaired, or superceded § 1983. We do not hold that enactment of the **TCA** had any effect on § 1983; we simply hold that the **TCA** itself did not create a right that can be asserted under § 1983 in lieu of  **[\*23]**  the **TCA's** own remedial scheme. See Sea Clammers, 453 U.S. at 20 n.31 (holding, despite savings clause, that comprehensive remedial schemes of water pollution statutes impliedly foreclosed resort to § 1983).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7 No other federal court of appeals has addressed this question. The District Court decisions are split, but most contain little or no analysis. For decisions holding that a **TCA** claim of the type involved here may be asserted under § 1983, see, for example, Cellco P'ship v. Hess, 1999 WL 178364 (E.D. Pa. Mar. 30, 1999); MCI Telecomm. Corp. v. Southern New England Tel. Co., 27 F. Supp. 2d 326 (D. Conn 1998); APT Minneapolis, Inc. v. City of Maplewood, 1998 U.S. Dist. LEXIS 14613, 1998 WL 634224 (D. Minn. Aug. 12, 1998); Smart SMR of New York v. Zoning Comm'n of the Town of Stratford, 995 F. Supp. 52 (D. Conn. 1998); Cellco Partnership v. Town Plan & Zoning Comm'n of Farmington, 3 F. Supp. 2d 178, 186 (D. Conn. 1998). Omnipoint Communications v. Zoning Hearing Bd. of Chadds Ford Township, 1998 WL 764762 (E.D. Pa. 1998); Sprint Spectrum v. Town of Easton, 982 F. Supp. 47 (D. Mass 1997).

For contrary decisions, see, for example, Omnipoint Communications v. Charlestown Township, 2000 U.S. Dist. LEXIS 866, 2000 WL 128703 (E.D. Pa. 2000); Omnipoint Communications v. Easttown Township, 72 F. Supp. 2d 512 (E.D. Pa, 1999); Omnipoint Communications v. Foster Township, 46 F. Supp. 2d 396 (M.D. Pa. 1999); Omnipoint Communications v. Penn Forest, 42 F. Supp. 2d 493 (M.D. Pa. 1999); National Telecomm. Advisors, Inc. v. City of Chicopee, 16 F. Supp. 2d 117 (D. Mass. 1998).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -  **[\*24]**

IV

For the reasons explained above, the Order of the District Court, issued in favor of Kingston Township and against NPI, is AFFIRMED.

Source:   All Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > **US Court of Appeals Cases - 3rd Circuit** ❶
Terms:   tca and date geq (1/1/2002)  (Edit Search)
View:   Full
Date/Time:   Sunday, April 14, 2002 - 11:27 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source:  All Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > US Court of Appeals Cases - 3rd
Circuit ⓘ

Terms:  **tca and date geq (1/1/2002)**  (Edit Search)

↲ Select for FOCUS™ or Delivery
☐

*282 F.3d 257, \*; 2002 U.S. App. LEXIS 3444, \*\**

NEXTEL WEST CORP., a Delaware Corporation d/b/a NEXTEL COMMUNICATIONS v. UNITY
TOWNSHIP, WESTMORELAND COUNTY, PENNSYLVANIA, a Political Subdivision of the
Commonwealth of Pennsylvania; THE ZONING HEARING BOARD OF UNITY TOWNSHIP; Nextel
West Corp., d/b/a Nextel Communications, Appellant

No. 01-2030

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

282 F.3d 257; 2002 U.S. App. LEXIS 3444

October 18, 2001, Argued
**March** 5, 2002, Filed

**PRIOR HISTORY:  [\*\*1]**  ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA. (Dist. Court No. 98-CV-1258). District Court
Judge: Honorable Donald E. Ziegler.

**DISPOSITION:**  Reversed and remanded.

**CORE CONCEPTS -** ♦ Show Concepts

**COUNSEL:** CLIFFORD B. LEVINE (Argued), ALICE B. MITINGER, Thorp Reed & Armstrong,
LLP, Pittsburgh, PA, Counsel for Appellant.

JOSEPH J. BOSICK, JEANETTE H. HO (Argued), Pietragallo, Bosick & Gordon, Pittsburgh, PA,
Counsel for Appellee.

**JUDGES:** Before: MANSMANN, ALITO, and BARRY, Circuit Judges.

**OPINIONBY:** ALITO

**OPINION:  [\*259]**

OPINION OF THE COURT

ALITO, Circuit Judge:

Nextel West Corporation ("Nextel"), a wireless telecommunications company, has attempted
to gain permission from the defendants, Unity Township ("Township") and its Zoning Hearing
Board ("ZHB"), to build a 250-foot radio tower on private property in the Township, which is
located southeast of Pittsburgh. On appeal to this Court, Nextel argues that the Township
violated the federal Telecommunications Act of 1996 ("**TCA**"), see 47 U.S.C. § 332(c)(7)
(2000), in two ways: (1) its zoning ordinance has the "effect of prohibiting" all wireless
telecommunications towers in the Township, and (2) the Township's disparate treatment of
Nextel and a competitor  **[\*\*2]**  constituted "unreasonable discrimination" under the **TCA.**
47 U.S.C. § 332(c)(7)(B)(i). The District Court held that the case was mooted by an
amendment of the original zoning _____ e granted the Township's motion for

DEFENDANT'S
EXHIBIT
_B_

summary judgement on all claims. Because we hold that this case is not moot, we reverse and remand for adjudication of the merits of Nextel's two **TCA** claims.

I.

To create a wireless network that provides uninterrupted cell phone service for a given geographical region, a telecommunications company must stitch together a patchwork of transmission cells. An antenna is located in the approximate center of a cell and the antenna transmits wireless signals to and from cell phone users in that cell. Because an antenna transmits signals on a line-of-sight basis, it is typically mounted on a tower or other tall structure. The perimeter of each cell is shaped by the topography surrounding the antenna. Where the terrain is flat, a cell is circular and several miles in diameter. But the hilly terrain of western Pennsylvania distorts the shape and shrinks the size of a cell. The gaps these distortions create complicate the process of stitching **[**3]** together cells to blanket the targeted region.

Because each wireless company is licensed by the Federal Communications Commission ("FCC") to use a different radio frequency, and because different companies use different transmission technologies, each wireless provider must deploy its own network of antennae, spaced at intervals so that their cells interlock. Providers usually prefer to mount an antenna on a existing building or telecommunications tower. When no suitable buildings or towers are located in the area where an antennae is needed, a company must build a new tower to provide wireless service in that area. For a wireless provider, the absence of coverage over a high-use **[*260]** area (e.g., a population cluster or major road) creates legal and commercial problems. In order to retain its FCC license for a region, a licensee must achieve quality coverage (defined by the industry as the absence of "dropped" calls) for a certain percentage of the region's population within a certain number of years after the license was granted; if the licensee fails to do so, it will forfeit its entire license. See 47 C.F.R. § 90.685 (d) (2002). In addition, the ability to provide **[**4]** uninterrupted coverage in high-use areas is considered essential for a wireless company to remain competitive in that region.

In this case, Nextel had a significant gap in service along a segment of U.S. Route 30, Unity's only major highway. n1 In that area, there were no towers or other tall structures on which Nextel could co-locate a "viable" antenna, i.e., an antenna that would cover Nextel's gap along Route 30. Nextel therefore undertook a thorough search for a location where it could place a viable tower.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 A gap in service, i.e., an area not covered by wireless signals, results in dropped calls as callers enter the uncovered area.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Township's original ordinance permitted telecommunications towers, inaptly categorized as "utility substations," only in manufacturing zones, and it limited these towers to 75 feet in height, well below the industry average in that region. n2 See App. at 1110. The parties agreed that no tower built in any of the manufacturing districts would be viable. n3 Instead, Nextel **[**5]** identified a nearby 38-acre farm where a viable tower could be located. The farm site was in a residential zoning district, just beyond the edge of a manufacturing district. The site was near Route 30 and would adequately cover the gap. Moreover, it did not appear that this location would present any aviation problem.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The average height of new cell towers in western Pennsylvania region is allegedly 100-150 feet. App. at 1059, 1064.

n3 Most districts were too close to the airport. Any tower in the airport's vicinity would require approval from the Federal Aviation Administration ("FAA"), which was very unlikely, considering the height the tower would need to be to cover the service gap. See App. at 498-99. The remainder of the manufacturing districts were veiled from U.S. Route 30 by hills, and thus transmissions from a tower there would be topographically blocked.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Nextel applied to the ZHB for a variance to locate a tower on the farm site. In July 1998, the ZHB denied the variance. Nextel also filed **[**6]** an exclusionary challenge with the ZHB attacking the ordinance's validity under the **TCA** and state law. Nextel contended that the ordinance effectively prohibited wireless telecommunications facilities in the Township. When the ZHB failed to respond, Nextel's exclusionary challenge was deemed denied. In September 1998, days after Nextel's exclusionary challenge was denied, the Township settled a lawsuit filed by Sprint, a competitor of Nextel, after a state court reversed the ZHB's denial of Sprint's variance. See Sprint Spectrum v. Unity Township, 80 Westmoreland L.J. 53 (Pa. Ct. Common Pleas 1998). Sprint had sought to build a cell tower in a manufacturing district to cover a service gap in its network, but the proposed height of the tower (250 feet) far exceeded the ordinance's limit. In accordance with the settlement agreement, Sprint withdrew its exclusionary challenge against the ordinance, and the Township issued a variance that allowed Sprint to build its 250-foot tower.

Nextel timely filed two **TCA** actions based on these two denials from the ZHB, and the District Court consolidated the two actions. While this litigation was pending before the District Court, the **[**7]** **[*261]** Township amended its original ordinance in February 1999 in three ways. First, the amended ordinance allowed wireless telecommunications towers in two additional zoning districts (agricultural and conservation, but still not residential). Second, it permitted towers as a "special exception" if the site in question satisfied certain criteria. See App. at 1201-06. Third, it raised the maximum height of towers in manufacturing districts to 180 feet and in agricultural and conservation districts to 150 feet (plus 50 feet more if the setback was sufficient). Nextel argues, however, that the criteria to qualify a tower site for a special exception are so burdensome and the additional districts so remote from Route 30 that, in actuality, Nextel's ability to obtain approval for a viable tower was effectively unaltered by the amendment.

After the amendment, the parties filed cross-motions for summary judgment. Nextel argued that the summary judgment record showed that (1) the original ordinance was impermissibly exclusionary under state law, (2) the original ordinance violated the federal **TCA** by effectively prohibiting wireless telecommunications services, and (3) the Township violated the **[**8]** **TCA** by unreasonably discriminating in favor of Sprint. The District Court granted summary judgment to the Township. It held that Nextel's claims under the **TCA** were mooted by the 1999 amendment of the ordinance. Absent any allegation of diversity jurisdiction, the District Court found it had no supplemental jurisdiction over the pendent state law claims and dismissed them without prejudice.

II.

This appeal presents three primary issues: (1) whether the 1999 amendment to the ordinance renders Nextel's two **TCA** claims either moot or unripe, (2) whether the ordinance has the "effect of prohibiting" wireless facilities and thus violates the **TCA**, and (3) whether the Township violated the **TCA** by "unreasonably discriminating" against Nextel. n4 Nextel requests an injunction directing the Township to permit Nextel to build a 250-foot tower on the farm site. The District Court's opinion addressed only the first issue (mootness) and found it dispositive. We hold that the 1999 amendment to the Township's ordinance did not moot either of Nextel's two claims under the **TCA**. We therefore remand the case to the District Court to adjudicate the merits of Nextel's two **TCA** claims and any state law claims **[**9]**

over which supplemental jurisdiction is appropriate.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 The **TCA** provides, in relevant part, as follows:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof -- (I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i) (emphasis added).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

A.

The Constitution permits a federal court to exercise jurisdiction only over cases or controversies. See U.S. Const., art. III. If a claim no longer presents a live case or controversy, the claim is moot and the federal court lacks jurisdiction to hear it. See Allen v. Wright, 468 U.S. 737, 750, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). This requirement must be met "through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 108 L. Ed. 2d 400, 110 S. Ct. 1249 (1990). **[\*\*10]** If the claim is based on a statute or ordinance that is **[\*262]** amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment.

On the one hand, if an amendment removes those features in the statute being challenged by the claim, any claim for injunctive relief "'becomes moot as to those features.'" Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 194 (3d Cir. 2001) (holding that facial constitutional challenges -- on equal protection and other grounds -- were mooted by an amendment that significantly broadened the statute's scope and thus alleviated these facial claims) (quoting Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992); see also Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414-15, 30 L. Ed. 2d 567, 92 S. Ct. 574 (1972) (holding that a facial challenge was mooted by an amendment that substantially altered the objectionable statutory provision). Similarly, if the amendment provides sufficient relief to the plaintiff, the claim becomes moot. See U.S. Dept. of Treasury v. Galioto, 477 U.S. 556, 559-60, 91 L. Ed. 2d 459, 106 S. Ct. 2683 (1986) **[\*\*11]** (holding that an amendment that gave plaintiffs a new administrative remedy mooted constitutional challenges regarding equal protection and irrebuttable presumptions); Black United Fund of New Jersey, Inc. v. Kean, 763 F.2d 156, 160-61 (3d Cir. 1985) (holding plaintiff's claims were mooted by an amendment because the "raison d'etre for the injunction no longer exists," and noting that the amendment "will give plaintiff substantially the relief it sought in the district court").

On the other hand, an amendment does not moot the claim if the updated statute differs only insignificantly from the original. See Northeastern Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662, 124 L. Ed. 2d 586, 113 S. Ct. 2297 (1993) (rejecting a misinterpretation of the holding in City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 71 L. Ed. 2d 152, 102 S. Ct. 1070 (1982), that would permit "a defendant to moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect"). A claim is not mooted by the amendment if the "gravamen of petitioner's complaint" **[\*\*12]** remains because, although the new ordinance

"may disadvantage [plaintiffs] to a lesser degree than the old one," still "it disadvantages them in the same fundamental way." Id.; see also <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1313-15 (11th Cir. 2000)</u> (holding the challenged provisions of the old ordinance "have not been sufficiently altered [by the amendment] so as to eliminate the issues raised" and that the violations alleged under the old ordinance could be reasonably expected to continue under the new ordinance); <u>Naturist Soc'y, 958 F.2d at 1520</u> ("Where a superceding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot. . . . To the extent that those [challenged] features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot.").

In Khodara, we held that, although facial challenges were mooted by the amendment, the as-applied challenges were not moot because relief was still available for these claims, which the amendment had not **[**13]** redressed. n5 See <u>Khodara, 237 F.3d at **[*263]** 195-96.</u> In <u>Rosetti v. Shalala, 12 F.3d 1216 (3d Cir. 1993),</u> we held the case was not mooted by the promulgation of new regulations because they gave plaintiffs "only some, not all, of the relief they sought." <u>12 F.3d at 1233.</u> Although the plaintiffs had requested relief in the form of new regulations, they had also sought a separate form of injunctive relief that was unaddressed and was therefore not mooted by these new regulations. See id.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 In Khodara, we determined the mootness of plaintiff's claims according to the availability of relief after the statute was amended. After the statute was amended, the prospective declaratory and injunctive relief sought through the facial challenges was moot, but the damages sought through the as-applied challenges saved these latter claims from mootness. The plaintiff's "claim for damages for the past application [of the original statute] invests it with a continuing, concrete stake in the outcome of this litigation that has not been redressed by the passage of the [recent] Amendment." <u>237 F.3d at 196.</u>

We reject the Township's mistaken argument that seizes on the existence of a claim for damages as the litmus test for mootness. The Township's contention -- because Nextel seeks only injunctive relief and not damages, the 1999 amendment moots Nextel's claims -- misinterprets our reasoning in Khodara. It was the continuing availability of relief, unredressed by the amendment, that kept the controversy alive in Khodara. Similarly, the relief requested by Nextel -- declaring the ordinance invalid and/or enjoin the Township to permit Nextel to build its farm-site tower -- remain meaningful and available after the 1999 amendment.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - **[**14]**

1. Claim of Prohibitive Effect. Applying this case law to Nextel's first **TCA** claim, we hold that the Township's amendment did not sufficiently alter the ordinance to moot the question whether Unity's ordinance effectively prohibits wireless facilities. Even though the amendment did, on its face, loosen the zoning restrictions on wireless towers, the controversy over its effect remains alive, and injunctive relief remains available. According to Nextel, both before and after the amendment, the ordinance effectively prohibited Nextel from locating a tower in any viable location. Nextel argues that the changes introduced by the amendment -- an increase in height limits, the addition of two types of zoning districts, and the special exception procedure -- still provided no feasible location for a tower that could cover the gap in service. Under the Khodara analysis, the challenged feature of the original ordinance (i.e., its allegedly prohibitive effect) was not removed by the amendment.

In the language of Northeastern Florida Chapter, both before and after the amendment, "the gravamen" of Nextel's complaint remained: the allegedly prohibitive effect of the Township's ordinance still **[**15]** violated the <u>TCA. 508 U.S. at 662.</u> Both before and after

amendment, Nextel was allegedly "disadvantaged in the same fundamental way": it still cannot place a viable tower anywhere in the Township. Id. As for the continuing availability of requested relief, crucial in Rosetti, the amendment in no way redressed Nextel's request for site-specific, injunctive relief.

In holding that Nextel's **TCA** claims were moot, the District Court did not compare the effect of the original ordinance and the amended ordinance. It did not discuss whether and to what extent the allegedly prohibitive effect of the original ordinance had been altered by the amendment. Instead, the Court reasoned that because the amendment added something to the ordinance -- namely, criteria under which towers could be permitted as special exceptions -- Nextel's claims had become moot. See App. at 19-20. The District Court relied on Burke v. Barnes, 479 U.S. 361, 363, 93 L. Ed. 2d 732, 107 S. Ct. 734 (1987) and Diffenderfer for the proposition that a statute's expiration or repeal deprives the plaintiff of injunctive and declaratory **[*264]** relief. But that rule is inapplicable here, because the original **[**16]** ordinance was merely amended. More appropriate for these facts is the mootness inquiry from Northeastern Florida Chapter and Khodara, i.e., whether the amendment sufficiently altered or removed the challenged aspects of the original legislation to moot the underlying claims.

2. Claim of Unreasonable Discrimination. In addition to its claim that the Township's ordinance violated the **TCA** by effectively prohibiting cell towers, Nextel also claimed that the defendants violated the **TCA** by discriminating against it and in favor of a competitor, Sprint. We hold that this claim is also not moot. The District Court failed to make a distinction between Nextel's two separate **TCA** claims. The District Court's opinion did not explain how a change in the text of an ordinance could moot a claim of past discriminatory conduct.

Nextel seeks a remedy for the Township's decision to deny its variance request, while granting a similar variance to Sprint. The variance permitted Sprint to build its tower in a manner otherwise impermissible under either the original or amended ordinance. Even if the amendment had mooted Nextel's first claim by purging the ordinance of its allegedly prohibitive effect, the **[**17]** amendment in no way altered Nextel's claim of unreasonably discriminatory conduct by the Township. This controversy is very much alive.

B.

Although the District Court did not discuss ripeness, the appellees have urged us to affirm the decision of the District Court on the alternative ground that Nextel's claims are not ripe. We are convinced, however, that Nextel's **TCA** claims are ripe for adjudication on the merits by the District Court. We reject the Township's argument that Nextel's claims are unripe because Nextel has not yet applied for a permit or variance under the amended ordinance. We find the Township's position -- that any amendment to a zoning ordinance forces an applicant to reapply in order for its **TCA** claim to ripen -- extreme and contrary to precedent.

The Township's position would enable a municipality to trap telecommunications plaintiffs in a litigation limbo between mootness and unripeness, frustrating the **TCA's** purpose. Under the Township's approach, as long as a municipality passed an insignificant amendment after each **TCA** action was filed, it could block telecommunications plaintiffs' access to court, even though expedited review in federal court is the benefit **[**18]** Congress expressly intended to confer on wireless providers by enacting the **TCA**. See 47 U.S.C. § 332(c)(7)(B)(v). The Supreme Court squarely rejected this theory when discussing mootness in Northeastern Florida Chapter. See 508 U.S. at 662 (rejecting a rule that would permit "a defendant [to] moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect"). We thus hold that Nextel's claims are ripe.

C.

On remand, the District Court must weigh the merits of two **TCA** claims that require separate

analyses but work together to effectuate the purpose of the statute. n6 **[\*265]** First, the District Court must determine whether the ordinance had a prohibitive effect on wireless facilities. Second, it must decide whether the Township unreasonably discriminated against Nextel.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 The Federal Telecommunications Act of 1996 seeks to create "a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunication and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458 at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124. It seeks to balance this goal against the legitimate concerns of state and local governments in regulating the siting of wireless facilities. See H.R. Conf. Rep. No. 104-204, at 94-95 (1995), reprinted in 1996 U.S.C.C.A.N. 61.

Though Nextel makes two separate claims under the **TCA,** the two provisions from which these claims derive -- effectively prohibit and unreasonably discriminate -- work together to promote the expansion of wireless telecommunications networks by protecting telecommunications plaintiffs.

The first provision (forbidding ordinances which effectively prohibit wireless facilities) aims to open up municipalities to wireless providers generally. The second provision (against unreasonable discrimination) seeks to ensure that, once the municipality allows the first wireless provider to enter, the municipality will not unreasonably exclude subsequent providers who similarly wish to enter and create a competitive market in telecommunications services.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - **[\*\*19]**

1. Prohibitive effect. The **TCA** states that ordinances are actionable if they "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i) (2000). The statute does not define what constitutes prohibitive effect, but case law provides guidance. We have interpreted the "effect of prohibiting" clause to include a situation in which a zoning ordinance causes "significant gaps" in wireless coverage, and we have suggested that a "significant commuter highway" would present such a gap. Cellular Tel. Co. v. Ho-ho-kus, 197 F.3d 64, 70 (3d Cir. 1999) (finding the phrase "effect of prohibiting" to mean "more than simply ensuring that personal wireless services are available somewhere in the relevant jurisdiction").

A recent decision by this Court involved facts similar to those now before us. n7 In APT Pittsburgh Ltd. Partnership v. Penn Township, 196 F.3d 469 (3d Cir. 1999), we adopted a two-prong test to determine whether an ordinance had the prohibitive effect that the **TCA** forbids. n8 See 196 F.3d at 480-81. To satisfy the first prong, "the provider must show that its [proposed] **[\*\*20]** facility will fill an existing significant gap ... in the service available to remote users." 196 F.3d at 480. We defined this prong as requiring a gap from a user's perspective, rather than a particular provider's perspective. Thus, this prong focuses on whether any provider is covering the gap, instead of whether the gap exists only in, for example, Nextel's service. A provider must "include evidence that the area the new facility will serve is not already served by another provider." n9 Id. In the present case, the relevant testimony on this issue is scant and conclusory, but it suggests that a gap existed for all providers **[\*266]** and not only Nextel. n10 In oral argument, counsel for Nextel asserted that no provider covers this gap but did not refer to any evidence. On remand, the District Court should make a factual determination as to whether this service gap existed for all or for Nextel alone.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7 The wireless provider suffered from a gap in coverage along a hilly township's major highway corridor. It unsuccessfully sought a variance to locate a tower in a rural area (zoned residential). A zoning amendment then restricted wireless telecommunications towers to three manufacturing districts, none of which were technologically feasible and available for the provider. See APT Pittsburgh, 196 F.3d at 472. **[\*\*21]**

n8 The test is also employed in Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 639 (2d Cir. 1999).

n9 However, if an applicant is denied a permit to cover an area when other providers have been approved, this may violate a different provision in the **TCA**: unreasonable discrimination. Both the Willoth and APT Pittsburgh courts note that, even if a particular provider's gap is already serviced by another provider, "the **TCA** may invalidate the denial of a variance [to the new entrant] if it has the effect of unreasonably discriminating between providers." APT Pittsburgh, 196 F.3d at 480 n.8.

n10 According to the affidavit of Nextel's expert witness, Mr. Monfredi (an outside consultant and engineer) concluded that, after conducting tests using multiple sites and frequencies, "no licensed provider of wireless telecommunications services, regardless of the frequency at which it operates, can provide functional service to the Unity Corridor and to the Unity Communities if such carrier is required to strictly comply with either the 1998 Ordinance or the Subsequent [1999] Ordinance." App. at 1379-80.

The Township did not refute this statement with any evidence. Instead, it objected that Monfredi's tests insufficiently explore possibilities under the amendment's increased height allowances.

At minimum, the record shows that not a single cell tower has been permitted in the Township under the ordinance. The sole tower (Sprint's) was built pursuant to a variance from limits imposed by the ordinance, granted only as part of a settlement. See App. at 1188, 1191.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[\*\*22]**

The second prong of the prohibitive-effect test in APT Pittsburgh requires the telecommunications plaintiff to show "that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that denial sought to serve." Id. The court offered examples of a good-faith effort to find and evaluate less intrusive alternatives: consideration of other sites, other system designs, other tower designs, existing structures, etc. See id. Whether the farm site is the least intrusive means to fill the gap in service is a decision for the District Court on remand. We note that Nextel put forward testimony suggesting that its proposal is relatively unintrusive. n11 The record lacks a direct response from the Township regarding intrusiveness; instead the Township referred (but did not commit itself) to an alternative proposal to build two or three shorter towers. n12

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n11 Nextel's expert witness stated that "where collocation on existing structures is not feasible, it is commonplace for municipalities to prefer the construction of a single tower to multiple towers. This preference holds even if the single tower must be built to a greater height than would be necessary with additional sites." App. at 1387-88. **[\*\*23]**

n12 Nextel's expert witness testified that the use of multiple sites "has many limitations that make it impractical." App. at 1382.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

2. Unreasonable discrimination. Independent of Nextel's claim of prohibitive effect, Nextel makes a claim of unreasonable discrimination under the **TCA. The TCA** requires that the "regulation of the placement, construction, and modification of personal wireless service facilities by [local governments] ... shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i). Another two-prong test emerges from this provision. See APT Pittsburgh Ltd. P'ship v. Lower Yoder Township, 111 F. Supp. 2d 664, 674-75 (W.D. Pa. 2000). In this analysis, the first prong asks whether the relevant providers are "functionally equivalent." 47 U.S.C. § 332(c)(7)(B)(i). If they are, then the second prong asks whether the governmental body "unreasonably discriminated among providers." Id. In the instant case, the record clearly shows that Sprint and Nextel are functionally equivalent. **[**24]** n13 On **[*267]** remand, therefore, the District Court should examine whether the Township's discrimination against Nextel and in favor of Sprint was reasonable.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n13 We think the equivalency of function relates to the telecommunications services the entity provides, not to the technical particularities (design, technology, or frequency) of its operations. The **TCA** clearly does not force competing wireless providers to adopt identical technology or design nor does it compel them to fit their networks of antennae into a uniform, rigid honeycomb of interlocking cells. Indeed, the FCC's assignment of a different frequency and signal strength to each licensee renders such uniformity impossible. In this region, Sprint and Nextel provide the same service -- personal wireless communications services to remote users -- and therefore are functionally equivalent.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

To preserve the ability of local governments and zoning boards to take into account the uniqueness of land, the **TCA** "explicitly contemplates that some discrimination .. **[**25]** . is allowed. Any discrimination need only be reasonable." AT&T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998); see also Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999). In a footnote in APT Pittsburgh, we stated that relief under the **TCA's** discrimination provision "will require a showing that the other provider is similarly situated, i.e., that the 'structure, placement or cumulative impact' of the existing facilities makes them as or more intrusive than the proposed facility." 196 F.3d at 480 n.8. Discrimination may be impermissible where a municipality favors one provider by permitting it to locate in a particular area at the exclusion of others, thereby creating unfair competitive advantage. See Western PCS II, Corp. v. Extraterritorial Zoning Auth., 957 F. Supp. 1230, 1237-38 (D.N.M. 1997).

The record before us is insufficient to determine conclusively whether Sprint and Nextel were indeed similarly situated and whether the Township's discrimination was unreasonable. Thus far, Nextel has shown strong similarities between the two situations. Initially, both Sprint and **[**26]** Nextel had a service gap in the Township, both proposed to build a 250-foot tower, both were denied a variance, both appealed the ZHB's denial, and both filed exclusionary challenges against the Township. However, after the Court of Common Pleas of Westmoreland County reversed the denial of Sprint's variance, the Township decided to settle with Sprint. Pursuant to the agreement, the Township gave Sprint the site-specific relief it requested (a variance to build its 250-foot tower) and Sprint withdrew its exclusionary challenge. By contrast, Nextel received no variance and no explanation as to why its exclusionary challenge was denied only days before the Township settled with Sprint. If, on remand, the District Court can find no reasonable basis for this discrimination, then Nextel should prevail on this claim.

III.

For the reasons explained above, the order of the District Court granting summary judgment in favor of the Township is REVERSED and the case is remanded for three fact-specific determinations: (1) whether the service gap was suffered by all wireless providers or only Nextel, (2) whether erecting a tower at the farm site proposed by Nextel was the least intrusive means **[**27]** for covering the gap in service along U.S. Route 30, and (3) whether the Township's discrimination between Nextel and Sprint was unreasonable. If the District Court finds that no provider was covering the service gap and that the farm site was the least intrusive means of covering that gap, or it finds that the Township's discrimination was unreasonable, then Nextel is entitled to remedies available under the **TCA.**

Source:  All Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > US Court of Appeals Cases - 3rd
         Circuit ⓘ
Terms:   **tca and date geq (1/1/2002)**  (Edit Search)
View:    Full
Date/Time: Sunday, April 14, 2002 - 12:45 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## **CERTIFICATE OF SERVICE**

I, Rachael L. Minnich, an employee with the law firm of Marshall, Dennehey, Warner, Coleman & Goggin, do hereby certify that on this ___25___ day of April, 2002, a true and correct copy of the foregoing document was served via U.S. first-class mail, postage pre-paid, as follows:

Carol A. Steinour, Esquire
McNEES, WALLACE & NURICK
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166


RACHAEL L. MINNICH