cc: JConner, MJSmyser, attys Steenour,
Gemmill, Courtney, Hanna

(35)
9/26/02

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMERICAN TOWER, L.P.,        : CIVIL NO: 1:CV-00-2234
            Plaintiff,       :
                             : (Judge Conner)
        v.                   :
                             : (Magistrate Judge Smyser)
ZONING HEARING BOARD OF      :
MONROE TOWNSHIP,             :
CUMBERLAND COUNTY,           :
PENNSYLVANIA and             :
MONROE TOWNSHIP, CUMBERLAND  :
COUNTY, PENNSYLVANIA,        :
            Defendants       :

**FILED**
HARRISBURG, PA

SEP 26 2002

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

## REPORT AND RECOMMENDATION

The plaintiff, American Tower, L.P., commenced this

action by filing a complaint on December 22, 2000.  The

plaintiff claims that the defendants, the Zoning Hearing Board

of Monroe Township (Zoning Board) and Monroe Township,

improperly denied its application for a variance to construct a

150 foot high wireless communications monopole on property

along Route 74 in Monroe Township.

The plaintiff's complaint contains four counts.  Count

I contains two claims under the Telecommunications Act (TCA).

The first of these claims is that the defendants' denial of the plaintiff's application for a variance has prohibited or has the effect of prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  The second of these claims is that the defendants by their denial of the plaintiff's application for a variance have unreasonably discriminated among providers of functionally equivalent services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I).  Count II of the complaint is a claim that the Zoning Board's decision denying the plaintiff's application for a variance is not supported by substantial evidence contained in a written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii).  Count III is a 42 U.S.C. § 1983 claim based on the defendants' alleged violations of the TCA.  Count IV is a claim that the Zoning Board erred at law and abused its discretion.

The defendants filed a motion to dismiss Count III of the Complaint.  By a Memorandum and Order dated April 6, 2001, Judge Kane denied the motion to dismiss.

2

On April 30, 2001, the defendants filed an answer to the complaint.

On September 12, 2001, the defendants filed a motion for summary judgment, and on September 28, 2001, the plaintiff filed a cross-motion for summary judgment. The parties have filed briefs and the motions are ripe for disposition.

By an Order dated July 17, 2002, Judge Kane referred the motions for summary judgment to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

On September 17, 2002, this case was reassigned from Judge Kane to Judge Conner.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party bears the initial

responsibility of informing the court of the basis for its

motion and identifying those portions of the record which

demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving

party may discharge that burden by "'showing'-- that is,

pointing out to the district court -- that there is an absence

of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party

may not rest upon the mere allegations or denials of its

pleading; rather, the nonmoving party must "set forth specific

facts showing that there is a genuine issue for trial."

Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable

jury, considering the evidence presented, could find for the

non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94

(3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986)). A material factual dispute is a dispute

as to a factual issue that will affect the outcome of the trial under governing law. *Anderson, supra*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

The plaintiff is engaged in the business of developing, constructing and leasing antennae towers to carriers and providers of personal wireless services. *(Defendants' Statement of Undisputed Facts at ¶2 and the plaintiff's response thereto)*. The plaintiff proposed to construct a Personal Wireless Service Facility (PWSF), consisting of a 150 feet high wireless communications monopole and an accessory equipment shelter, on property along Route 74 in Monroe Township, Cumberland County, Pennsylvania. *(Plaintiff's Statement of Undisputed Material Facts at ¶¶2-3 and the defendants' responses thereto)*. The proposed site of the PWSF is located in the Township's Agricultural Zone. *Id.* at ¶4. The Township's Zoning Ordinance does not permit construction or use of a PWSF

5

AO 72A
(Rev. 8/82)

on property located within the Agricultural Zone. *Id.* at ¶5.
PWSFs are permitted in the Township's Conservation and
Industrial Zones. *Id.* at ¶ 6.

On August 1, 2000, the plaintiff filed an application
for a variance from the Zoning Ordinance to construct the PWSF.
*Id.* at ¶7.   In addition to requesting a variance, the plaintiff
requested that the Zoning Board find the Zoning Ordinance
substantively invalid under the Telecommunications Act. *(Doc.
17, Exhibit T-2).*  The Zoning Board held hearings on the
plaintiff's application on August 23, 2000 and October 25,
2000. *(Plaintiff's Statement of Undisputed Material Facts at
¶11 and the defendants' response thereto).*  On December 5,
2000, the Zoning Board issued a written decision denying the
plaintiff's application. *(Doc. 17, Exhibit EX-2).*

We will first address the plaintiff's claims under the
TCA.

6

"Congress enacted the TCA to provide 'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" *APT Pittsburgh Ltd. P'ship v. Penn Twp.*, 196 F.3d 469, 473 (3d Cir. 1999). Although seeking to establish such a national framework, the TCA expressly preserves the general authority of state and local governments to make land use decisions "regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). *See Town of Amherst v. Omnipoint Communications Enters., Inc.*, 173 F.3d 9, 13 (1st Cir. 1999)(stating that Section 332(c)(7) of the TCA "is a deliberate compromise between two competing aims - to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."). However, the TCA places several substantive and procedural limits upon local governments' regulation of the

7

placement, construction and modification of personal wireless service facilities. *APT Pittsburgh, supra*, 196 F.3d at 473.

Three of the TCA's limitations are at issue in this case. The first is the TCA's ban on regulations that "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

Every denial of an application to build a PWSF will, to some degree, have the effect of prohibiting personal wireless service because it will preclude the applicant from building a facility to serve its customers. *APT Pittsburgh, supra*, 196 F.3d at 478. To interpret the TCA to prohibit "every individual zoning denial simply because it has the effect of precluding a specific provider from providing wireless services, however, would give the TCA preemptive effect well beyond what Congress intended" and would be inconsistent with the structure of § 332(c)(7). *Id.* at 478-79. To establish a violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), an applicant must "show more than that it was denied an opportunity to fill a gap

8

in its service system." *Id.* at 480.   The Third Circuit has adopted a two-part test.   "First, the provider must show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network." *Id.*   Since the relevant gap is a gap in the service available to remote users and not all gaps in a particular provider's service will involve a gap in the service available to remote users, the applicant must show "that the area the new facility will serve is not already served by another provider." *Id.*   "Second, the provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve."   *Id.*   "This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." *Id.*

9

In the instant case, the plaintiff has failed to establish a significant gap in the ability of remote users to access the national telephone network. At the hearing before the Zoning Board, the plaintiff presented the testimony of Hoo Tan Roosta, the president of an engineering consulting firm. Mr. Roosta testified about bench-marking tests that he performed. Those tests revealed that there is a gap in coverage around the proposed site on the Cellular A Band, the band utilized by AT&T. *Doc. 17, Exhibit Ex-1 at 23.* Mr. Roosta, however, testified that there was not a gap in coverage under the Cellular B band, the band utilized by Verizon. *Id.* at 22. Jesse Kopelman, a radio frequency engineer with AT&T wireless, provided similar testimony. *Id.* at 35 & 71. The plaintiff has not established that the area that the proposed PWSF will serve is not already served by another provider. Accordingly, the defendants are entitled to summary judgment on the plaintiff's 47 U.S.C. § 332(c)(7)(B)(i)(II) claim.

Another limitation imposed by the TCA on local governments' regulation of the placement, construction and

10

modification of personal wireless service facilities is a ban

on regulations which "unreasonably discriminate among providers

of functionally equivalent services."  47 U.S.C.

§ 332(c)(7)(B)(i)(I).


"To preserve the ability of local governments and

zoning boards to take into account the uniqueness of land, the

TCA 'explicitly contemplates that some discrimination . . . is

allowed.'" *Nextel West Corp. v. Unity Township*, 282 F.3d 257,

266 (3d Cir. 2002)(quoting *AT&T Wireless PCS, Inc. v. City*

*Council of Virginia Beach*, 155 F.3d 423, 427 (4th Cir. 1998)).

"Any discrimination need only be reasonable." *Id*.  "Another

two-prong test emerges from this provision." *Id*.  Under the

first prong, the applicant must establish "that providers of

'functionally equivalent services' were treated differently

that it was."  *APT Pittsburgh v. Lower Yoder Twp.*, 111

F.Supp.2d 664, 674 (W.D.Pa. 2000).  Under the second prong, the

question is whether the governmental body unreasonably

discriminated among providers. *Nextel West Corp., supra*, 282

F.3d at 266.   Localities may "treat facilities that create

11

different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services." H.R. Conf. No. 104-458 at 208, reprinted in 1996 U.S.C.C.A.N. at 222.  The applicant must show that the other provider is "'similarly situated, i.e. that the 'structure, placement or cumulative impact' of the existing facilities makes them as or more intrusive than the proposed facility.'"  *Nextel West Corp., supra,* 282 F.3d at 266 (quoting *APT Pittsburgh, supra,* 196 F.3d at 480 n.8.).  "Discrimination may be impermissible where a municipality favors one provider by permitting it to locate in a particular area at the exclusion of others, thereby creating unfair competitive advantage."  *Id.*

In the instant case, the plaintiff presented evidence before the Zoning Board that it owns another tower in the Township. *Doc. 17, Exhibit EX-1 at 86.*  This other tower is located in one of the industrial zones in the Township. *Id.* at 95.  The plaintiff owns the tower and leases space on the tower

12

to two wireless providers - Omnipoint and Nextel. *Id.* at 86-87.

Matthew Bucey, an employee of the plaintiff, testified about

the area in which the existing tower is located and the area in

which the proposed tower would be located. *Id.* at 87-99.  Mr.

Bucey testified that the existing tower, which is a 150 feet

lattice-type structure, is located close to a dense residential

area. *Id.* at 94 & 105.  He testified that at the proposed site

existing trees and the topography of the area would provide a

lot of natural screening for the proposed tower, which would be

a monopole-type tower. *Id.* at 94-95 & 106.  He testified that a

tower on the proposed site would be less visually intrusive

than the existing tower.  *Id.* at 94.


     The plaintiff has not presented any evidence that the

Township has allowed others to build a tower in an agricultural

zone.  It is not unreasonable for the Township to treat

requests to build towers in different zones differently. *See*

*Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 639 (2nd Cir.

1999)("local governments may reasonably take the location of

the telecommunications tower into consideration when deciding

AO 72A
(Rev. 8/82)

whether . . . to approve the application for construction of
wireless telecommunications facilities, even though this may
result in discrimination between providers of functionally
equivalent services."). It is not unreasonable for the
Township to allow a tower in an industrial district but not in
an agricultural district. *See* H.R. Conf. No. 104-458 at 208,
reprinted in 1996 U.S.C.C.A.N. at 222 ("[T]he conferees do not
intend that if a State or local government grants a permit in a
commercial district, it must also grant a permit for a
competitor's 50-foot tower in a residential district."). This
is not a case where the Township has permitted one provider to
locate in a particular are at the exclusion of others, thereby
creating unfair competitive advantage. The plaintiff has
failed to establish that the defendants unreasonably
discriminated against it. Accordingly, the defendants are
entitled to summary judgment on the plaintiff's 47 U.S.C.
§ 332(c)(7)(B)(i)(I) claim.

The third limitation at issue in this case imposed by
the TCA on local governments' regulation of the placement,

14

construction and modification of personal wireless service facilities is a procedural requirement. 47 U.S.C. § 332(c)(7)(B)(iii) provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  The substantial evidence requirement applies "to determinations of factual issues made by a state or local authority in the course of applying state and local zoning law." *APT Pittsburgh, supra*, 196 F.3d at 474.  "In the context of § 332(c)(7)(B)(iii), the decision process itself is governed by applicable state and local zoning laws," and "[t]he reviewing court's task is to determine whether the decision, as guided by local law, is supported by substantial evidence." *Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 72 (3d Cir. 1999).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a

AO 72A
(Rev. 8/82)

conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  In

an adequately developed factual record, substantial evidence

may be "something less than the weight of the evidence, and the

possibility of drawing two inconsistent conclusions from the

evidence does not prevent [the decision] from being supported

by substantial evidence." *Consolo v. Federal Maritime Comm'n*,

383 U.S. 607, 620 (1966).  A reviewing court's task is to

determine whether there is substantial evidence in the record

as a whole to support the decision, and the reviewing court

does not have the power either to weigh the evidence contained

in the record or to substitute its own conclusions for those of

the fact-finder. *Cellular Telephone, supra,* 197 F.3d at 71.

Nevertheless, if there is conflicting evidence, the fact-finder

must explain its reasons for rejecting or discrediting

competent evidence. *Id*.


In the instant case, the plaintiff asserts that it is

not challenging the Zoning Board's decision denying its request

for a variance.  It appears that the plaintiff is claiming that

the Zoning Board's rejection of its challenge based on the TCA

16

was not supported by substantial evidence. However, the substantial evidence standard does not apply to the issues raised by the plaintiff's challenge based on the TCA. *See APT Pittsburgh, supra*, 196 F.3d at 475 (holding that the substantial evidence standard of § 332(c)(7)(B)(iii) does not apply to the issue of whether a denial of an application to construct a personal wireless service facility has the effect of prohibiting the provision of personal wireless services); *APT Pittsburgh v. Lower Yoder Twp.*, 111 F.Supp.2d at 676 (holding that the substantial evidence standard of § 332(c)(7)(B)(iii) does not apply to the issue of whether a municipality unreasonably discriminated among providers of functionally equivalent services).

The plaintiff argues that the applicable state and local law in this case is § 604.1 of the Zoning Ordinance and § 916.1 of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10916.1.

17

The plaintiff asserts that § 604.1 of the Zoning Ordinance requires the Zoning Board to hear and render decisions on substantive challenges to the validity of the Zoning Ordinance.  In this case, the Zoning Board did hear and decide the plaintiff's substantive challenges based on the TCA, the only substantive challenges raised by the plaintiff.

Section 916.1 of the Pennsylvania Municipalities Planning Code sets forth the procedure for raising and deciding substantive challenges to the validity of a zoning ordinance and requires *inter alia* that the determination of a substantive challenge be based upon the testimony presented at the hearing. The plaintiff contends that the Zoning Board failed to base its determination as to the validity of the Zoning Ordinance on the testimony presented at the hearing.  The plaintiff contends that Zoning Board failed to based its decision on the testimony presented at the hearing because the Zoning Board failed to credit the evidence presented by the plaintiff regarding the alleged gap in coverage and the evidence presented by the plaintiff to the effect that the proposed tower would be less

18

intrusive than an existing tower.  This is just another way to argue that the Zoning Board's decision regarding the plaintiff's TCA claim was not supported by substantial evidence.  As already noted, such determinations are not subject to the substantial evidence standard.

Given that the plaintiff has asserted that it is not challenging the Zoning Board's decision denying a variance, which is the only decision in this case that is subject to the substantial evidence standard of § 332(c)(7)(B)(iii), the defendants are entitled to summary judgment on the plaintiff's 47 U.S.C. § 332(c)(7)(B)(iii) claim.

Count III of the complaint is a 42 U.S.C. § 1983 claim based on the defendants' alleged violation of the TCA.  The United States Court of Appeals for the Third Circuit has recently held that by creating a comprehensive remedial scheme that furnishes private judicial remedies the TCA implicitly precludes an action under 42 U.S.C. § 1983. *Nextel Partners Inc. v. Kingston Twp.*, 286 F.3d 687 (3d Cir. 2002).

19

Accordingly, the plaintiff's 42 U.S.C. § 1983 claim should be dismissed.

Finally, Count IV of the complaint is a claim that the Zoning Board erred and abused its discretion in denying the plaintiff's application.  In this regard, the plaintiff contends that the Zoning Board erred and abused its discretion by denying its substantive challenges under the TCA.  As the discussion regarding the plaintiff's substantive challenges under the TCA indicates, the Zoning Board did not err or abuse its discretion.  Accordingly, the defendants are entitled to summary judgment on this claim.

Based on the foregoing, it is recommended that the defendants' motion (doc. 14) for summary judgment be granted, that the plaintiff's motion (doc. 19) for summary judgment be denied and that the case file be closed.

J. Andrew Smyser
Magistrate Judge

Dated: 9-26-02.

20

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMERICAN TOWER, L.P.,          : CIVIL NO: 1:CV-00-2234
                Plaintiff,     :
                               : (Judge Conner)
          v.                   :
                               : (Magistrate Judge Smyser)
ZONING HEARING BOARD OF        :
MONROE TOWNSHIP,               :
CUMBERLAND COUNTY,             :                **FILED**
PENNSYLVANIA and               :           **HARRISBURG, PA**
MONROE TOWNSHIP, CUMBERLAND    :
COUNTY, PENNSYLVANIA,          :              SEP 26 2002
                Defendants     :
                                          MARY E. D'ANDREA, CLERK
                                          Per _____
                                                     Deputy Clerk

## NOTICE

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3 of the Rules of Court, M.D.Pa., which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. §636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within ten (10) days** after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

J. Andrew Smyser
Magistrate Judge

Dated:  9-26-02